James E. Cecchi
CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Rd.
Roseland, NJ 07068
973-994-17000
jcecchi@carellabyrne.com

HALL ATTORNEYS, P.C. — Nicholas Hall
P.O. Box 1370, Edna, TX 77957 | (713) 428-8967 | nhall@hallattorneys.com
FEDERMAN & SHERWOOD — William B. Federman; Jessica A. Wilkes
10205 N. Pennsylvania Avenue, Oklahoma City, OK 73120 | (405) 235-1560
wbf@federmanlaw.com | jaw@federmanlaw.com
Hall, Federman, and Wilkes: pro hac vice admission to be sought

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOUIS CATO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED,<br><br>Defendant. | **Civil Action No. __________**<br><br>**Judge: __________________**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

1. Plaintiff Louis Cato ("Plaintiff") resides at 5439 West 25th Street, Apt. 1, Cicero, Illinois 60804, in Cook County. Defendant Quest Diagnostics Incorporated ("Quest") maintains its principal place of business at 500 Plaza Drive, Secaucus, New Jersey 07094. Plaintiff brings this action individually and on behalf of all others similarly situated, through undersigned counsel.

## I. NATURE OF THE ACTION

2. This class action arises from unauthorized access to patient records in Quest's Quanum Lab Services Manager ("Quanum LSM"), disclosed on October 22, 2026 (the "Data

Breach"). Plaintiff challenges Quest's failure to use reasonable safeguards in connection with the patient information and laboratory-services transactions identified below.

3. Quest reported discovering unauthorized access to Quanum LSM on October 21, 2026. Its October 22 Form 8-K disclosed its belief that an unauthorized party had accessed certain patient records.[1]

4. Quest's public notice confirms that patient health or identifying information was involved. Its October 26 update reports restoration of Quanum LSM while the investigation of affected patients and information continues.[2]

5. Plaintiff brings his individual claims concerning the Quest laboratory services and affected records described in Sections IV.D and IV.E below.

6. "Private Information" means personally identifiable information and protected health information contained in patient records accessed or acquired in the Data Breach, including identifying information associated with laboratory orders and results. The affected records and Quest's investigation will establish the information involved for each patient.

7. Plaintiff alleges his own conduct and experiences on personal knowledge. Allegations concerning Quest's operations and the Data Breach are based on the public disclosures identified below, counsel's investigation, and information and belief where the relevant facts are principally within Quest's possession.

## II. PARTIES

8. Plaintiff is an adult domiciled in and a citizen of Illinois.

---

1 Quest Diagnostics Inc., *Current Report (Form 8-K)*, cover page & Item 8.01 (Oct. 22, 2026), https://www.sec.gov/Archives/edgar/data/1022079/000094787126000941/ss6979200_8k.htm.
2 Quest Diagnostics, *Quanum*, incident update & provider and patient FAQs (Oct. 26, 2026, 8:00 a.m. ET), https://www.questdiagnostics.com/links/quanum-notice (last visited Oct. 29, 2026).

9. Quest is a Delaware corporation with its principal place of business in Secaucus, New Jersey. Quest is therefore a citizen of Delaware and New Jersey for diversity purposes. 28 U.S.C. § 1332(c)(1).[3]

10. Quest provides laboratory testing and related services. Its own public disclosure identifies Quanum LSM as a system used by certain Quest clients to submit laboratory orders and to obtain and search test results. Quest's alleged liability here arises from its operation and control of that system and the information entrusted to it.

## III. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (5)(B), and (6). Plaintiff is an Illinois citizen, Quest is a citizen of Delaware and New Jersey, and the proposed action satisfies minimal diversity.

12. On information and belief, the Nationwide Class includes at least 100 persons, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This allegation is based on Quest's nationwide laboratory services, Quanum LSM's clinical ordering and results-access functions, Quest's disclosure that unauthorized access involved patient information, and the aggregate compensatory and otherwise recoverable relief sought for affected persons. The affected-person count and records necessary to quantify their claims are principally within Quest's possession.

13. Quest maintains the affected-system, patient-identification, and investigation records necessary to determine the precise class size and scope. Jurisdiction rests on the Class Action Fairness Act, not a private federal cause of action under HIPAA.

---

3 Quest Diagnostics Inc., *Current Report (Form 8-K)*, cover page (Oct. 22, 2026), https://www.sec.gov/Archives/edgar/data/1022079/000094787126000941/ss6979200_8k.htm.

14. This Court has personal jurisdiction over Quest because Quest maintains its principal place of business in New Jersey and is at home in this State. Venue is proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Quest resides in this District for venue purposes.

15. New Jersey choice-of-law rules govern the selection of substantive law. Plaintiff asserts Illinois law for his individual claims and the Illinois Subclass. To the extent the applicable analysis selects New Jersey law for a common-law claim, Plaintiff pleads that theory in the alternative under Federal Rule of Civil Procedure 8(d). The Illinois statutory claim is asserted only for Plaintiff and the Illinois Subclass.

16. Plaintiff seeks certification of the Nationwide Class for claims or common issues susceptible to common treatment under the governing law. Alternatively, he seeks certification of the Illinois Subclass and appropriate issue classes.

## IV. FACTUAL ALLEGATIONS

### A. Quest's collection and use of confidential patient information

17. Quest's laboratory services require it to receive and generate information associated with identifiable patients. That information is collected for clinical testing, communication of results, and related authorized purposes. The sensitivity of medical information makes access by an unauthorized person a foreseeable source of injury.

18. Quest describes Quanum LSM as a professional platform through which healthcare personnel can order laboratory tests, review results, monitor order status, and consult historical results. Quest operates the platform to maintain patient laboratory information and furnish that information to healthcare providers for their patients' care.[4]

---

4 Quest Diagnostics, *Quanum Lab Services Manager*, https://www.questdiagnostics.com/healthcare-professionals/lab-tools-it-systems/quanum-lab-services-manager (last visited Oct. 29, 2026).

19. Patients do not administer Quanum LSM's access controls, security monitoring, or response procedures. Quest and those acting under its authority control those safeguards. Patients cannot independently inspect the system's security or prevent an unauthorized person from exploiting deficiencies within it.

20. Quest's Notice of Privacy Practices identifies laboratory orders, results, and invoices as documents containing protected health information. It describes Quest's responsibility to preserve privacy and provide breach notices, and its use of patient information to perform testing and communicate results to authorized healthcare professionals.[5]

21. Quest also represents that it maintains enterprise privacy and cybersecurity programs encompassing access controls, vulnerability management, risk assessments, incident response, and administrative, technical, and physical safeguards. These representations concern operational security measures designed to protect information entrusted to Quest.[6]

22. The nature and volume of the confidential information within the system, Quest's ability to control access, and the foreseeable consequences of unauthorized access required reasonable safeguards proportionate to the risks. Plaintiff alleges a duty to exercise reasonable care in performing the data-handling functions Quest undertook.

**B. The October 2026 unauthorized access**

23. October 21, 2026 is Quest's reported discovery date. The public disclosure does not establish when the intrusion began or how long unauthorized access persisted.

---

5 Quest Diagnostics, *Notice of Privacy Practices*, "Our Responsibilities" & "Treatment" (effective Feb. 16, 2026), https://www.questdiagnostics.com/our-company/privacy/notice-of-privacy-practices.

6 Quest Diagnostics, *Cybersecurity & Privacy*, https://www.questdiagnostics.com/our-company/corporate-responsibility/cybersecurity---privacy (last visited Oct. 29, 2026).

24. Quest acknowledges unauthorized access to patient information. The particular affected records and individuals remain under investigation.

25. Quest paused Quanum LSM and reported restoring access on October 26, 2026. Quest also says Essential Insights and LabHQ were paused as a precaution, without data access in those systems, and later restored.[7]

26. The means and timing of entry, permissions used, records accessed, and operation of the relevant safeguards are principally within Quest's knowledge. Its system logs, authentication and access records, risk assessments, and forensic investigation will identify the mechanism and scope of the intrusion.

27. On information and belief, Quest failed to implement and maintain reasonable safeguards restricting access to the affected patient records to authorized persons and purposes, including effective authentication, permissions, and monitoring of activity involving those records. Those deficiencies permitted the unauthorized access Quest disclosed. This allegation rests on Quest's control of the clinical platform, the acknowledged access to patient records, and the confidentiality undertaking and security requirements described below. The specific control failures are within Quest's technical and investigative records.

28. Reasonable safeguards appropriate to the affected system would have prevented or materially limited the unauthorized access and resulting loss of confidentiality. The particular control failures and their operation will be established through Quest's technical and investigative records.

---

7 Quest Diagnostics, *Quanum*, incident update & provider FAQs (Oct. 26, 2026, 8:00 a.m. ET), https://www.questdiagnostics.com/links/quanum-notice (last visited Oct. 29, 2026).

**C. Foreseeability and reasonable security standards**

29. Unauthorized access to clinical information was a risk known to Quest before October 2026. In December 2016, Quest disclosed an intrusion into the separate MyQuest by Care360 application involving protected health information of approximately 34,000 individuals, including laboratory results. That earlier event placed Quest on notice of the foreseeable consequences of unauthorized access to its patients' medical information.[8]

30. Before the Data Breach, federal agencies identified vulnerability management, access controls, and monitoring as established security practices. HHS's voluntary healthcare cybersecurity goals call for mitigation of known vulnerabilities, effective access restrictions, and collection of security logs. The FTC likewise advises businesses to maintain reasonable procedures for updating third-party software and promptly addressing credible security warnings.[9]

31. Quest's role as a healthcare provider handling electronic protected health information subjects the relevant activities to HIPAA's Security Rule. The rule requires covered entities to protect the confidentiality, integrity, and availability of that information and guard against reasonably anticipated threats and impermissible uses or disclosures. 45 C.F.R. § 164.306(a) (2026).

32. The Security Rule requires an accurate and thorough risk analysis and measures sufficient to reduce identified risks and vulnerabilities to a reasonable and appropriate level. It also

8 Quest Diagnostics Inc., *Quest Diagnostics Provides Notice of Data Security Incident* (Dec. 12, 2016), https://ir.questdiagnostics.com/press-releases/press-release-details/2016/Quest-Diagnostics-Provides-Notice-of-Data-Security-Incident/default.aspx.

9 U.S. Dep't of Health & Hum. Servs., *Healthcare and Public Health Sector-Specific Cybersecurity Performance Goals* 2–5 (2024), https://hhscyber.hhs.gov/Documents/cybersecurity-performance-goals.pdf; Fed. Trade Comm'n, *Start with Security: A Guide for Business* 12 (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

requires regular review of information-system activity and procedures to address security incidents. 45 C.F.R. § 164.308(a)(1)(ii)(A)–(B), (D), (a)(6) (2026).

33. Technical safeguards include access controls allowing access only to persons or software programs with access rights, mechanisms to record and examine system activity, and procedures to verify the identity of persons or entities seeking access. 45 C.F.R. § 164.312(a)(1), (b), (d) (2026).

34. These safeguards address the risk of unauthorized access to identifiable patients' electronic health information. Plaintiff invokes them as evidence of reasonable care in performing Quest's independent undertaking to receive, generate, maintain, and protect patient information. The claims do not seek a private federal remedy under HIPAA.

35. Reasonable protection requires safeguards to operate in practice. Quest's inventory, access-control configuration, authentication and audit logs, risk assessments, vulnerability-management records, and forensic investigation will establish which safeguards applied and how the intrusion occurred.

**D. Plaintiff's Quest laboratory testing**

36. Plaintiff Cato has obtained laboratory services from Quest. In providing these services, Quest received information identifying him and generated and maintained records linking his identity to his laboratory testing and results.

37. In the laboratory-services transactions identified above, Plaintiff authorized the testing and use of information necessary to obtain his results. Quest accepted the specimens and information, provided the services, and retained the associated patient records. Their conduct manifested an undertaking to provide laboratory services and use reasonable safeguards to preserve the confidentiality of information entrusted for that purpose.

**E. Plaintiff's exposure and resulting injuries**

38. Plaintiff learned of Quest's October 22, 2026, disclosure of unauthorized access to patient records. On information and belief, the records accessed included Plaintiff's identifying information and confidential laboratory information. That allegation is based on his history of using Quest testing, Quest's maintenance of his associated records, Quanum LSM's function of providing access to patient orders and historical results, and Quest's disclosure of its belief that certain patient records had been accessed. Quest's affected record and investigative records will identify the particular records involved.

39. The unauthorized access alleged above deprived Plaintiff of the confidentiality of medical information he entrusted to Quest for laboratory services. He did not authorize an outside intruder to obtain that information. The alleged access invaded his private medical affairs and concerns the kind of privacy injury traditionally protected against intrusion upon seclusion.

40. Plaintiff has experienced emotional distress concerning the loss of confidentiality alleged above and the prospect of an unauthorized person obtaining and using his private medical information. His concern relates to the identifiable laboratory information he entrusted to Quest. Plaintiff's injuries include the loss of medical confidentiality alleged above, his actual response time, and emotional distress. He seeks recovery for the consequences of Quest's conduct under the claims below, without duplicate recovery.

41. On information and belief, Quest's deficient safeguards were a factual and proximate cause of the unauthorized access and resulting loss of confidentiality. The need for affected patients to investigate the disclosure and respond to its consequences was foreseeable when Quest undertook to maintain confidential patient records.

## V. CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action under Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following proposed classes:

43. Nationwide Class: All natural persons who resided in the United States when their personally identifiable information or protected health information was contained in patient records accessed or acquired by an unauthorized person in the Quanum LSM incident disclosed by Quest on October 22, 2026.

44. Illinois Subclass: All members of the Nationwide Class who were domiciled in Illinois when their information was affected and whose affected records arose from Quest laboratory services obtained in Illinois. For Count III, the subclass is further limited to members who incurred out-of-pocket mitigation expenses after receiving individualized notice of the incident or experienced unreimbursed unauthorized charges following the incident.

45. Excluded are Quest; its officers and directors; the judicial officers assigned to this action and their immediate families; and any person who timely and validly requests exclusion from a class certified under Rule 23(b)(3).

46. Class membership can be determined through objective evidence, including affected-record inventories, forensic and access records, and notification records. The definitions turn on records involved in the identified intrusion, not on whether Quest is ultimately liable to a particular person.

47. Numerosity. On information and belief, the Nationwide Class includes at least 100 individuals, and joinder is impracticable. The nationwide scope and clinical functions of Quanum LSM support that inference; the precise affected-person count has not been publicly disclosed. Quest's affected-record and notification records will identify class members and their geographic distribution. Plaintiff will establish numerosity independently for the Illinois Subclass.

48. Commonality. The claims present common questions capable of common answers through evidence about the same incident and system, including the following:

A. What patient information was accessible through the intrusion, and which records were actually accessed or acquired;

B. What safeguards Quest maintained for Quanum LSM, whether they were reasonable, and which safeguards failed;

C. Whether Quest performed the applicable risk-analysis, access-control, audit, authentication, and security-management functions;

D. Whether the challenged safeguards and conduct caused the unauthorized access to the affected patient records;

E. Whether materially uniform patient transactions and undertakings created an obligation to safeguard the entrusted information and whether Quest breached it; and

F. What injuries, statutory remedies, and damages resulted from the challenged conduct and are recoverable under the governing law.

49. Typicality. Plaintiff's claims arise from the same unauthorized access to the same clinical platform and the same alleged failures to protect patient information. Plaintiff's exposure and resulting injuries arise from the course of conduct challenged on behalf of the classes. Differences in the amount of recoverable loss do not change the common alleged source of injury.

50. Adequacy. Plaintiff seeks to protect the same interests as the proposed class members and has no known conflict with them. He has retained counsel experienced in class litigation, including Hall Attorneys, P.C. and Federman & Sherwood. Plaintiff and his counsel will fairly and adequately protect the interests of the classes and seek appointment under Rule 23(g).

51. Predominance. Common evidence concerning the intrusion, the affected system, the security measures, and their causal relationship to unauthorized access will resolve central liability issues. For the implied-contract claim, Plaintiff seeks common treatment only for members whose materially similar transactions and undertakings can establish the alleged obligation through common proof.

52. Plaintiff will address actual differences in governing state law and demonstrate any proposed grouping of materially similar laws. He seeks the Illinois Subclass as an alternative to nationwide certification and for the Illinois statutory claim, and will propose only subclasses supported by an adequate representative and a workable trial plan.

53. Damages. Class members' losses may be established through records and claims procedures consistent with the governing law. Plaintiff will present a damages methodology tied to the certified theory of liability and preserving each party's right to contest causation and the amount of individual recovery.

54. Superiority. The cost of separate litigation over the same system and intrusion would discourage many individuals with relatively modest losses from pursuing relief. A class action can resolve shared issues efficiently, preserve consistent determinations, and provide notice and an opportunity to request exclusion where required. Concentrating the litigation here is appropriate because Quest maintains its principal place of business in this District.

55. Alternatively, Plaintiff seeks certification of appropriate common issues under Rule 23(c)(4), and subclasses under Rule 23(c)(5), to resolve shared liability questions while preserving any required individual determinations.

## VI. CLAIMS FOR RELIEF

### COUNT I — NEGLIGENCE

(Plaintiff and the Nationwide Class; alternatively, the Illinois Subclass)

56. Plaintiff realleges paragraphs 1 through 55. This count is brought on behalf of Plaintiff and the Nationwide Class or, alternatively, the Illinois Subclass, under the governing common law identified above.

57. Quest undertook to receive and use Plaintiff's identifying and health information to perform laboratory testing, generate and maintain records, and safeguard that information through the privacy and cybersecurity functions described above. In performing those functions, Quest owed a duty to exercise reasonable care toward the patients whose information it received and maintained.

58. Plaintiff's identifying and health information was necessary for Quest to provide the laboratory services identified above and associate the results with him. Quest accepted that information for those services and retained the resulting records within systems it controlled. Patients could not administer or inspect the safeguards on those systems.

59. Quest's duty arises from its affirmative undertaking to handle and safeguard information necessary for its laboratory services, independently of any contractual promise. Illinois law also required a data collector maintaining records containing covered personal information concerning Illinois residents to implement and maintain reasonable security measures against unauthorized access, acquisition, use, and disclosure. 815 Ill. Comp. Stat. 530/45(a).[10]

60. The HIPAA safeguards and recognized security practices described above further inform the standard of care applicable to that independent undertaking. Reasonable care required

---

10 *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶¶ 23–24; *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶¶ 47–55.

effective restrictions on access to the affected information and safeguards suited to the system's actual risks.

61. On information and belief, Quest breached its duty by failing to implement and maintain reasonable technical safeguards restricting access to the patient records within Quanum LSM to authorized persons and purposes. The alleged failures concern the affected system and information described above.

62. Those failures permitted the unauthorized patient-record access and resulting invasion of medical confidentiality alleged above. Reasonable safeguards would have prevented or materially limited that access and the resulting harm.

63. Unauthorized intrusion was a foreseeable risk that made the safeguards necessary. A third party's participation in the intrusion does not relieve Quest of responsibility for its own negligence in permitting foreseeable unauthorized access.

64. As a direct and proximate result, Plaintiff suffered the injuries and pecuniary loss identified in paragraphs 38 through 40. Plaintiff and class members seek compensatory damages for injuries caused by Quest's negligence and recoverable under the governing law, in an amount to be determined at trial.

**COUNT II — BREACH OF IMPLIED-IN-FACT CONTRACT**

(Plaintiff and the Nationwide Class; alternatively, the Illinois Subclass)

65. Plaintiff realleges paragraphs 1 through 55. This count is brought on behalf of Plaintiff and the Nationwide Class or, alternatively, the Illinois Subclass. It is pleaded in the alternative to any inconsistent tort theory under Federal Rule of Civil Procedure 8(d).

66. Plaintiff and Quest formed an implied-in-fact agreement through the laboratory-services transactions identified above. Plaintiff submitted to the testing and authorized the transfer

and use of information necessary to obtain results. Quest accepted the specimens and information, performed the services, and generated and retained the associated patient records.

67. The parties' conduct manifested an undertaking to provide the laboratory services and to use reasonable safeguards for the confidentiality of the information entrusted and generated in that exchange. Quest's published descriptions of its patient-information practices, identified above, further support the character of that undertaking.

68. Plaintiff performed his part of the transactions by submitting to the testing, providing the information necessary for the services, and authorizing the testing and related use of his information.

69. Materially similar patient transactions and undertakings established the same obligation for members of the proposed contract class. Quest's standardized patient materials, service records, and practices will establish the common terms and the persons to whom they applied.

70. On information and belief, Quest breached its undertaking by failing to implement and maintain reasonable safeguards restricting unauthorized access to the entrusted information. That failure permitted the unauthorized access and resulting loss of confidentiality alleged above.

71. The need to incur reasonable expenses responding to unauthorized disclosure of confidential patient information was a foreseeable consequence of a failure to perform the confidentiality undertaking. Plaintiff seeks the actual monetary loss identified in paragraph 40, to the extent caused by Quest's breach and recoverable under the governing law.

72. Plaintiff seeks compensatory damages for proven monetary losses caused by the breach, without duplicate recovery under the other counts.

## COUNT III — VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

815 Ill. Comp. Stat. 505/2, 505/10a

(Plaintiff and the Illinois Subclass)

73. Plaintiff realleges paragraphs 1 through 55. This count is brought on behalf of Plaintiff and the Illinois Subclass under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2, 505/10a, using violations of the Illinois Personal Information Protection Act ("PIPA"), 815 Ill. Comp. Stat. 530/20, 530/45, as an unlawful-practice predicate.

74. Quest provides laboratory services in trade or commerce. In connection with those services, it receives, generates, maintains, and uses nonpublic patient information and is a data collector under PIPA, 815 Ill. Comp. Stat. 530/5. This count concerns Quest's commercial and administrative practices for maintaining, securing, and controlling access to patient information.[11]

75. The affected records identified above contained Plaintiff's name together with confidential medical information concerning his laboratory testing and care, constituting personal information under PIPA.

76. Plaintiff's relevant transactions with Quest occurred primarily and substantially in Illinois.

77. PIPA required Quest to implement and maintain reasonable security measures protecting covered records against unauthorized access, acquisition, use, and disclosure. 815 Ill. Comp. Stat. 530/45(a).

---

11 *Mathis v. Yildiz*, 2023 IL App (1st) 221703, ¶¶ 28–31 (applying the Consumer Fraud Act to business aspects of a healthcare practice).

78. On information and belief, Quest violated that requirement through the unreasonable security practices alleged above, which permitted unauthorized access to the covered patient information. A violation of PIPA constitutes an unlawful practice under ICFA. 815 Ill. Comp. Stat. 530/20.

79. Quest's challenged security practices also were unfair because they subjected confidential patient information to a foreseeable risk of unauthorized access contrary to Illinois's express data-security policy. Patients could not reasonably avoid the resulting harm by administering access controls over systems Quest exclusively controlled. The resulting economic injuries outweigh any legitimate benefit from maintaining inadequate safeguards.

80. As a direct and proximate result, Plaintiff sustained the actual economic loss identified in paragraph 40.

81. Plaintiff and the Illinois Subclass seek actual damages and other relief authorized by 815 Ill. Comp. Stat. 505/10a, including reasonable attorneys' fees and costs under subsection (c), without duplicate recovery.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes, requests judgment against Quest and the following relief:

A. Certification of the appropriate class or subclasses under Rule 23; appointment of Plaintiff as class representative; and appointment of Plaintiff's counsel as class counsel under Rule 23(g);

B. Compensatory damages for proven losses, including actual damages recoverable under the Illinois Consumer Fraud and Deceptive Business Practices Act;

C. Prejudgment and postjudgment interest as allowed by law, taxable costs, and reasonable attorneys' fees and costs under 815 Ill. Comp. Stat. 505/10a(c) and any other applicable authority; and

D. Such other relief as the Court deems just and proper, without duplicate recovery.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Dated: November 5, 2026

Respectfully submitted,

*<u>/s/James E. Cecchi</u>*
James E. Cecchi
CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Rd.
Roseland, NJ 07068
973-994-1700
jcecchi@carellabyrne.com

HALL ATTORNEYS, P.C.
Nicholas Hall (Texas Bar No. 24069863)
Pro hac vice admission to be sought
P.O. Box 1370, Edna, Texas 77957
Telephone: (713) 428-8967
nhall@hallattorneys.com

FEDERMAN & SHERWOOD
William B. Federman (Oklahoma Bar No. 2853)
Jessica A. Wilkes (Oklahoma Bar No. 34823)
Pro hac vice admission to be sought
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
jaw@federmanlaw.com

Attorneys for Plaintiff and the Proposed Classes